Green, J.
delivered the opinion of the court.
In this case, the bill charges, that Freeman and wife, administrators of complainants intestate, committed a devastavit of their intestate’s estate, by confessing a judgment barred by the statute of limitations, in favor of the defendant, Gilliam, and when the assets of the estate were sold by virtue of Gilliam’s execution, a part of the proceeds of the sale was misapplied, by paying Gilliam a private debt due him from Freeman, and that defendant, Gilliam, colluded with said administrators’, in the commission of said fraud on the complainants. The answer admits the confession of judgment, the sale of the negroes, and their purchase by Gilliam; that he knew they were assets of the estate, and that'part of their price was applied to Freeman’s individual debt, but denies all fraud or collusion with the administrators to misapply the assets.
We think it is very clear that Freeman and wife intended, by the course they adopted in this business, to commit a fraud. If that were not their object, why had they so much solicitude that Mr. Dickinson should trade the note he held on Parker’s estate to Gilliam. The reason given by Mrs. Freeman, as stated in Gilliam’s answer, is manifestly a mere pre-tence. Gilliam’s answer states that Mrs. Freeman desired him to get the note that it might be paid and the interest stopped. Now if the administrators were determined to pay the note, to stop the interest, in spite of Mr. Dickinson’s repeatedly expressed willingness to indulge them as long as they might desire, why could they not pay Mr, Dickinson as easily as they could Gilliam. If they had no means of paying Gilliam but by the sale of the negroes, why might they not have sold the negroes to pay Mr. Dickinson? It will not be pretended that a forced sale under execution for cash, was likely to bo more beneficial to the estate, than a sale made by themselves on a liberal credit
*399 The truth is, this reason for refusing to accept the ind'ul-gence Mr. Dickinson offered, and for desiring that ® ^ should get the note, is so manifestly absurd and false, that it cannot for.a moment be insisted on, and yet, it is the only reason the parties offer. As therefore there is no reason consistent with honesty, that has been given or that can be given, why this arrangement was desired, we must conclude that they were actuated by improper considerations.
By Gilliam’s getting the note, the estate of Parker would be injured, but these administrators would be enabled to pay a private debt, get some money into their hands to embezzle, and Gilliam would get his private debt on Freeman paid, and a family of negroes into his hands without paying out any money scarcely.
Gilliam’s account of the circumstances attending the transaction with Mr. Dickinson, is false. He would- have us believe that the sale of a horse to Dickinson, was the primary matter of interest with him, and that as Dickinson would not pay money but offered notes for horses, the note on Parker’s estate was incidentally spoken of, and so the trade was brought about. Now, if this were true, why would he be so solicitous to get the note on Parker’s estate. Mr. Dickinson had other notes which he was willing to give, and he was unwilling to give Parker’s note, declaring he never would distress the estate, or put it in the power of another to do it. But Gilliam insisted on getting the Parker note, and to induce Dickinson to give it up, told him the administrators wished it. Does not this show that he had some peculiar reason for wishing to get Parker’s note, and that lie had beforehand arranged with the administrators about it.
When we look at these circumstances, we cannot resist the conviction that Freeman and wife deliberately intended to commit a fraud in the disposition of this property, and that Gilliam actively co-operated in the iniquity. Various other circumstances might be mentioned going to confirm this view of the case, such as his pretence that he would make no arrangement with Freeman about bidding for the negroes, and yet buying them, and paying no money, but retaining it a long time in his hands, until by the increase of'his private claims on *400 Freeman, he could pay it that way, thereby furnishing as much SUSpjcjon 0f jjjs conduct as could have been afforded by the act jje was s0 solicitous to avoid.
The view we take of the facts of this case, entitles the complainants to a decree. The principle laid down in all the authorities is, that a party who colludes with an executor to obtain the assets, or who obtains the assets by joining the executor in the perpetration of a fraud upon the estate, or who receives the assets, knowing that the intention of the executor in disposing of them, was to commit a devastavit or fraud upon creditors or distributees, is liable, and the assets may be . followed in his hands. 1 Atk. 463: 7 John. Ch. Rep. 17: 1 Story’s Eq. § 422, 519, 580.
Decree for complainants.